1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11  TYRONE LAMONT GRANT,                    )
                                            )
12              Plaintiff,                   )     Case  No. EDCV 14-1462 AJW
                                            )
13         v.                               )     MEMORANDUM OF DECISION
                                            )
14  CAROLYN W. COLVIN,                       )
    Acting Commissioner of the Social       )
15  Security Administration,                 )
                                            )
16              Defendant.                   )
   _____ )

17

18         Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the

19  Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance

20  benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each

21  disputed issue.

22                           **Administrative Proceedings**

23         Plaintiff filed an application for disability insurance benefits on December 13, 2011, alleging that

24  he had been disabled since October 28, 2011 due to limited mobility in his right leg post-surgery, "ruptured"

25  and "clogged" veins in his right leg, diabetes, high blood pressure, and a "bad right foot." [JS 2]. Plaintiff's

26  applications were denied initially and upon reconsideration. [JS 2; Administrative Record ("AR") 79-82,

27  86-91].  Plaintiff requested an administrative hearing, which was conducted before Administrative Law

28  Judge James P. Nguyen (the "ALJ") on March 8, 2013.  [AR 54-55, 92-93, 20].  Plaintiff, who was

1   represented by an attorney, testified on his own behalf. [AR 20-53]. Testimony also was received from

2   Kristan Sagliocco, a vocational expert.  [AR 20-53].

3        On April 5, 2013, the ALJ issued a written decision denying plaintiff's application for benefits. [AR

4   6-19].   The ALJ found that plaintiff had the following severe impairments: diabetes mellitus, diabetic

5   neuropathy, mild peripheral vascular disease, hypertension, hyperlipidemia, right leg atherosclerotic, status-

6   post right femoral-to-above-knee popliteal bypass with reversed great saphenous vein, harvest of the great

7   saphenous vein, popliteal and tibial thrombectomies, and atherosclerotic narrowing of the left femoral

8   arteries. [AR 11]. The ALJ determined, however, that plaintiff's impairments, singly or in combination, did

9   not meet or equal an impairment included in the Listing of Impairments (the "Listing").  [AR 11].  See 20

10  C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff retained the residual functional

11  capacity ("RFC") to perform a range of  light work, with postural and environmental limitations, and that

12  plaintiff's RFC precluded performance of his past relevant work as a deliverer, stock clerk, or commercial

13  institutional cleaner. [AR 12, 14]. Based on the testimony of the vocational expert, the ALJ determined that

14  plaintiff could perform alternative jobs that exist in significant numbers in the national economy. [AR 15].

15  The ALJ therefore concluded that plaintiff was not disabled at any time up to the date of his decision. The

16  Appeals Council denied plaintiff's request for review.  [AR 1-3].

17                              **Background**

18        Plaintiff was born in 1964, and he was 48 years old when the ALJ issued his decision. [AR 14].

19  Plaintiff  completed only ninth grade. [AR 26].

20        The evidence indicates that plaintiff has been treated for complaints of pain and numbness in his

21  right toe and foot. [AR 209-210]. He was hospitalized with right lower extremity limb ischemia in October

22  2011, and an angiography confirmed atherosclerosis in the right leg. [AR 209-211, 231-235]. Plaintiff

23  underwent corrective surgery during his hospital stay, a right femoral-to-above-the-knee popliteal bypass

24  with reversed great saphenous vein, harvest of the great saphenous vein, and popliteal and tibial

25  thrombectomies. [AR 206-235].

26         A neurological examination in October 2011 hospital stay revealed that sensation and

27  proprioception were normal and intact in all extremities. [AR 13, 210].A post-surgery angiogram showed

28  the bypass graft was widely patent.  It also showed atherosclerotic narrowing of the left distal superficial

femoral artery and left common femoral artery. [AR 291-292]. However, plaintiff has not received any treatment on his left leg.  Between October 2011 and March 2012, plaintiff was diagnosed with peripheral neuropathy, and, based on an abnormal ankle-branchial test, mild peripheral vascular disease. [AR 208, 237]. Treatment providers noted that plaintiff ambulates well, and that his gait was within normal limits [AR 13, 259, 270].

The record indicates that plaintiff has a long history of hypertension and diabetes. [AR 209].  An opthalmological examination in April 2012 indicated early non-proliferative diabetic retinopathy with 20/25 visual acuity. [AR 248].

During the hearing, plaintiff testified that he suffered from pain in both legs and feet.  [AR 28-29]. Plaintiff said that he was prescribed medication for pain, numbness, and tingling in right leg, but that those symptoms had not changed much since before his surgery in October 2011. [AR 27-28]. The pain on the left side had lasted for about a year.  Plaintiff said that his doctors had instructed him to elevate his left leg, and that he elevates his left leg for about an hour during the middle of the day and sleeps with a pillow between his legs. [AR 29-30]. Plaintiff testified that he is unable to do household chores and no longer drives. [AR 25]. He said that since his surgery he had his leg checked every 90 days. [AR 27]. Plaintiff testified that he needs to use a cane on a daily basis, but that he can walk short distances without it.  [AR 42-43]. Plaintiff said that he can sit down for about 30 minutes before having to stand up or massage his foot. [AR 35-36]. Plaintiff testified that he could not lift 20 pounds, and that he typically lifted only "[l]ittle stuff," like the remote control to the television. [AR 38].

In response to the ALJ's hypothetical questions, the vocational expert testified that a person with plaintiff's vocational profile who required a sit/stand option and the use of a cane if ambulating for 25 feet away from the work station would not be able to return to any of plaintiff's past work. [AR 48-49].  The vocational expert opined that the person could perform alternative occupations including light, unskilled inspector positions, assembler positions, and packager positions. [AR 49]. She also testified that no work would be available if the person required the option of elevating his feet. [AR 49].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir.

1    2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

2    a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

3    2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is

5    required to review the record as a whole and to consider evidence detracting from the decision as well as

6    evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

7    Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than

8    one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

9    Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

10   1999)).

### Statement of Disputed Issues

11

12        The sole disputed issue is whether the ALJ made a properly supported credibility finding.

### Discussion

13

14        Plaintiff contends that the ALJ improperly considered plaintiff's testimony about his subjective

15   symptoms. [JS 3-15].

16        If the record contains objective evidence of an underlying physical or mental impairment that is

17   reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all

18   subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

19   2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a),

20   416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of

21   malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's

22   subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc.

23   Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885.  "In reaching a credibility

24   determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct,

25   daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d

26   1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's

27   credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected

28   the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."

1    Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is

2    supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261

3    F.3d 853, 857 (9th Cir. 2001).

4      In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

5    including the following factors:  (1) the claimant's daily activities; (2) the location, duration, frequency, and

6    intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

7    and environmental conditions; (4) the type, dosage, effectiveness, and adverse side effects of any pain

8    medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

9    measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

10    claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3);

11    see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's

12    policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ "ordinary

13    techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for

14    truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and

15    the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

16    subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

17    friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light, 119 F.3d at 792

18    ; Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

19      Plaintiff complained of continuing pain, numbness and tingling in his right lower extremity and left

20    leg pain. [AR 27-28, 33-34, 29-30]. Plaintiff said that he used a cane (which was not prescribed) to walk

21    all but short distances, that he can stand approximately 30-40 minutes before having to sit down, and that

22    he is never pain-free or symptom-free. [AR 32, 35, 43].

23      The ALJ found that plaintiff's medically determinable impairments could reasonably be expected

24    to cause some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence

25    and limiting effects of her symptoms were not fully credible. [AR 12]. Specifically, the ALJ found that

26    plaintiff retained the RFC to perform "a range of light work with postural and environmental limitation,"

27    including a "sit/ stand option and the use of a cane for distances greater than 25 feet." [AR 14].

28      The ALJ articulated three reasons for discounting the alleged severity of plaintiff's subjective

complaints: (1) plaintiff failed to follow prescribed treatment; (2) plaintiff's prior work history raises questions about the credibility of his testimony that his subjective symptoms are disabling; and (3) plaintiff's allegations regarding the severity of his symptoms and limitations are disproportionate to the objective evidence of record. [AR 12-13].

First, the ALJ discredited plaintiff's subjective complaints because of plaintiff's failure to follow prescribed treatments. The ALJ noted that "treatment records show that the claimant failed to comply with prescribed medications" and "the claimant ran out of his medications." [AR 12, 13 (citing AR 251 (March 2012 emergency room note stating that plaintiff had not taken his hypertension medication (hydrochlorothiazide, abbreviated as "HCTZ") two days ago and was requesting a refill); AR 258 (November 2012 emergency room note stating that plaintiff had been out of medications for one week and was requesting refills)]. The ALJ construed this as exhibiting "a possible unwillingness to do what is necessary to improve his condition" and an indication "that the claimant's symptoms were not as severe as the claimant alleged." [AR 13].

An "unexplained, or inadequately explained, failure to seek treatment" can "cast doubt on the sincerity of" a claimant's subjective complaints. Fair, 885 F.2d at 603; see Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (explaining that a claimant's failure to seek treatment, or follow prescribed treatment, may support an adverse credibility finding). The ALJ, however, "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example, . . . [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p, 1996 WL 374186, at *7.

During the March 2013 hearing, the ALJ asked plaintiff why there was a gap in his treatment records from Fontana Family Medical Center ("Fontana Clinic") between July 2012 and December 2012. [AR 40]. Plaintiff testified that he was not eligible to receive treatment from Fontana Clinic during that period because his "Medicare ha[d] lapsed, so they told me to apply for the ArrowCare."[1] [AR 40]. Plaintiff said

---

[1]    The Court takes judicial notice of a San Bernardino County brochure dated April 4, 2012 describing ArrowCare as a low income health program for citizens and legal permanent residents

1    that he applied for ArrowCare, and that before he learned he was eligible for that program in or about

2    October 2012, he "would go to the emergency [room] to get my medication." [AR 40].  Emergency room

3    treatment records from Arrowhead Regional Medical Center indicate that plaintiff presented to the

4    emergency room to obtain medication refills in September 2012 and again in November 2012, when it was

5    noted that he had "recently" been approved for ArrowCare. [See AR 258-264].

6        It is unclear how plaintiff, who was then in his 40s, could have been covered by Medicare in 2012,

7    but his testimony and the medical reports establish that plaintiff had health insurance of some kind through

8    July 2012. [See AR 268 (July 30, 2012 Fontana Clinic progress note stating that plaintiff's "insurance to

9    expire tomorrow")].    Although plaintiff testified that he had to go to the emergency room to get his

10   medication refilled until he became eligible for ArrowCare, he did not say that he was unable to get his

11   medication refilled on a timely basis during that period.  Moreover, the record indicates that even when he

12   had health insurance, plaintiff sometimes sought medication refills from the emergency room, had gaps in

13   his medical treatment, and was noncompliant with his medication or with other treatment recommendations.

14   [See, e.g., AR 270 (March 2012 Fontana Clinic "Annual Visit Form 2012" noting that plaintiff "was in ER

15   last week for refill on meds," had "[o]nly seen a provider [with] ER a year ago [and] cannot remember the

16   name of the clinic," and that plaintiff had been advised to continue his medications and decrease salt intake);

17   AR 269 (June 2012 Fontana Clinic note diagnosing "uncontrolled" hypertension, hyperlipidemia, and

18   diabetes mellitus; noting that plaintiff was advised that he "must" decrease his salt intake, decrease fat and

19   cholesterol in his diet, and increase exercise; and reporting that plaintiff "declined" cholesterol medications

20   "for now" and was advised to continue all other medications); AR 268 (July 2012 Fontana Clinic note

21   stating that plaintiff was advised to continue his medications, continue his dietary restrictions, and increase

22   exercise); AR 267 (December 2012 Fontana Clinic note stating that plaintiff reported running out of

23   medications and going to the ER for a refill, that plaintiff's hypertension "needs better control," that his

24   diabetes mellitus was "uncontrolled," and that he needed to decrease dietary fat and better control his diet)].

25   The record as a whole supports the ALJ's inference that the evidence regarding plaintiff's inconsistent

26   compliance with his medications diminished the credibility of his allegations of disabling symptoms.

27

28   living in San Bernardino County who are not eligible for Medi-Cal.    See
     hs.sbcounty.gov/tad/Publications/lihp000411.pdf.

1   Second, the ALJ permissibly inferred that "the claimant's less than full-time employment and lack
2   of earnings record before the alleged disability onset date, raises questions as to whether the claimant's
3   current unemployment is actually the result of his medical problems." [AR 13]. The ALJ cited Exhibit 4D,
4   a "DISCO DIB Insured Status Report" ("Report") dated October 19, 2012. [JS 13, AR 140-141]. The Report
5   indicates that plaintiff last had reported earnings in 2008 and had no reported earnings in the years 2009,
6   2010, or 2011, before his alleged onset of disability on October 28, 2011. [AR 140-143].

7   A claimant's prior work record and efforts to work may be considered in assessing credibility. See
8   20 C.F.R. §§ 416.929(a), (c)(3) (stating that the Commissioner will consider a claimant's efforts to work and
9   prior work record in evaluating symptoms); SSR 96-7p, 1996 WL 374186, at *5 (stating that adjudicator
10  may consider "[s]tatements and reports from the individual and from treating or examining physicians or
11  psychologists and other persons about the individual's medical history, treatment and response, prior work
12  record and efforts to work, daily activities, and other information concerning the individual's symptoms and
13  how the symptoms affect the individual's ability to work"); see Thomas, 278 F.3d at 958-959 (holding that
14  the ALJ properly considered the claimant's "extremely poor work history" in discrediting her testimony);
15  Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998) (explaining that a poor work history may be considered
16  in evaluating a claimant's credibility). The ALJ did not err in concluding that plaintiff's lack of an earnings
17  record from employment for nearly three years before he allegedly became disabled undermines his
18  subjective testimony that he became unable to work in October 2011 due to his impairments.[2]

19  Third, the ALJ considered the lack of objective medical evidence corroborating the alleged severity
20  of plaintiff's subjective symptoms. Plaintiff argues that the ALJ's reliance on that factor is improper since
21  objective
22  evidence does not need to support the severity of pain allegations, and a credibility finding cannot be based
23  solely on a lack of support of objective evidence for the severity of symptoms. [JS 5-6].

---

25  [2]   The ALJ did not mention the apparent inconsistency between plaintiff's lack of an earnings
26  record between 2009 and 2011, on the one hand, and his written statements and testimony
    indicating, on the other hand,  that he worked full-time from 2008 until October 2011 as an
    "independent contractor" driving a truck delivering auto parts. [Compare AR 138-139, 141, 143 with
27  AR 46-47, 148, 153, 164].  Since the ALJ did not discuss that inconsistency, the Court may not
    consider it in determining whether the ALJ made a properly supported credibility finding, see
28  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The ALJ is not prohibited from considering the presence or absence of objective evidence corroborating the alleged severity of a claimant's subjective complaints. The ALJ may not, however, "reject a claimant's subjective complaints *based solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, 947 F.2d at 343 (emphasis added). The absence of medical findings to support the degree of severity alleged "is just one factor to be considered in evaluating the credibility of the testimony and complaints." Bunnell, 947 F.2d at 345 (citation omitted).

The ALJ permissibly relied in part on the lack of objective medical evidence corroborating the alleged severity of plaintiff's subjective symptoms. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (holding that the ALJ permissibly discredited the claimant's subjective complaints where the objective evidence did not corroborate the severity of the alleged symptoms, and the treating doctor released the claimant for return to "light duty work" despite the claimant's allegations of severe pain and limitations). Specifically, the ALJ noted that an angiogram done subsequent to the surgery on the right leg showed the bypass graft was widely patent. [AR 13, 291]. The ALJ noted that although an angiogram indicated atherosclerotic narrowing of the left distal superficial femoral artery and left common femoral artery, the absence of treatment for the left leg "suggests it was not required." [AR 13, 29]. Additionally, a neurological examination revealed that sensation was intact in all extremities, and that plaintiff had normal strength in all extremities. [AR 13, 210]. The ALJ pointed out that while plaintiff testified that he used a cane daily for all but short distances, "[m]ultiple doctors noted that [plaintiff] ambulates well, and his gait was within normal limits." [AR 13, 259, 270]. Although plaintiff had "a long history of hypertension, diabetes, and hyperlipidimia," he consistently "denied headaches, chest pain, shortness of breath, or dizziness." [AR 13]. Moreover, there was "no evidence of any significant end organ damage caused by any of these conditions," which "should be amenable to proper control by adherence to recommended medical management and medication compliance." [AR 13].

The ALJ permissibly inferred that the objective medical evidence did not corroborate the alleged severity of plaintiff's subjective complaints, but instead is consistent with the ALJ's finding that plaintiff can perform for a limited range of light work with the option to shift between sitting and standing every 30 minutes and the option to use of a cane if ambulating more than 25 feet away from the work station. [AR 12].

1    Finally, the ALJ noted that no doctor had opined that plaintiff was disabled, and that the

2    nonexamining state agency physicians found plaintiff capable of a range of light work. [AR 13-14, 72-75].

3    See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's

4    pain testimony based, in part, on an examining physician's opinion that the claimant was not disabled). The

5    ALJ gave the assessments of the nonexamining state agency physicians "significant weight" based on their

6    consistency with the objective medical evidence, but he also factored plaintiff's subjective symptoms into

7    the RFC by imposing additional restrictions on plaintiff's RFC in the form of the sit/stand option and option

8    to use a cane for distances greater than 25 feet. [AR 13-14].

9    The ALJ's finding that plaintiff's subjective symptom testimony is not fully credible is supported

10   by substantial evidence in the record and is free of legal error.

**Conclusion**

11

12   For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

13   is free of legal error.  Accordingly, the Commissioner's decision is **affirmed**.

14   **IT IS SO ORDERED.**

15

16   June 18, 2015

17   _____
     ANDREW J. WISTRICH
18   United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28